# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VIKING OFFSHORE (USA) INC., | § | Case No. 08-31219; |
| VIKING PRODUCER INC., | § | Case No. 08-31222; |
| VIKING PROSPECTOR INC., | § | Case No. 08-31224; |
| VIKING CENTURY INC. and | § | Case No. 08-31226; and |
| VIKING DRILLING ASA | § | Case No. 08-31228 |
| | § | |
| Debtors. | § | Jointly Administered under |
| | § | Case No. 08-31219 |
| | § | |
| | § | (Chapter 11) |
| | § | |
| | § | |

## JOINT NON-CONSOLIDATING CHAPTER 11 PLAN OF LIQUIDATION

| | |
|---|---|
| John P. Melko (TX 13919600) | Rhett G. Campbell (TX 03714500) |
| Amy Catherine Dinn (TX 24026801) | Demetra L. Liggins (TX 24026844) |
| Robert S. Blanc (TX 2444500) | Ira L. Herman (TX 24063314) |
| Clinton Snow (TX 24060629) | THOMPSON & KNIGHT LLP |
| GARDERE WYNNE SEWELL LLP | 333 Clay Street, Ste. 3300 |
| 1000 Louisiana, Suite 3400 | Houston, TX 77002-4499 |
| Houston, TX 77002-5011 | Telephone: (713) 654.8111 |
| Telephone: (713) 276-5500 | Facsimile: (713) 654.1871 |
| Facsimile: (713) 276-5555 | |
| | Counsel for Norsk Tillitsmann ASA, Bond Trustee under |
| Counsel for the Debtors and Debtors-in-Possession | the First Lien Loan Agreement and Second Lien Loan Agreement |

**DATED:** September 29, 2009

# TABLE OF CONTENTS

Page

ARTICLE I INTRODUCTION ........................................................................................1
    **1.1**    Introduction. .....................................................................................1
    **1.2**    General Plan Structure; Funding Sources. ......................................1

ARTICLE II DEFINITIONS AND INTERPRETATION ..............................................1
    **2.1**    Definitions. .......................................................................................1
    **2.2**    Interpretation, Rules of Construction, and Other Terms.................9

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .............................9
    **3.1**    Administrative Expenses and Priority Tax Claims..........................9
    **3.2**    Classes of Claims and Interests.....................................................10

ARTICLE IV TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS ...................12
    **4.1**    Administrative Expenses. ..............................................................12
    **4.2**    Priority Tax Claims. .......................................................................13
    **4.3**    Payment of Statutory Fees. ............................................................14
    **4.4**    Disallowance of Special Taxes. .....................................................14

ARTICLE V TREATMENT OF CLASSES ..................................................................14
    **5.1**    CLASSES 1A, 1B, 1C, 1D and 1E — Priority Non-Tax Claims. ...................14
    **5.2**    CLASSES 2A, 2B, 2C, 2D and 2E — Miscellaneous Secured Claims...........14
    **5.3**    CLASSES — 3C, 3D and 3E — Secured Claims of Maritime Lien
            Holders. ..........................................................................................15
    **5.4**    CLASSES 4.1A, 4.1B, 4.1C, 4.1D and 4.1E and CLASSES 4.2A,
            4.2B, 4.2C, 4.2D and 4.2E — Secured Claims of Bondholders. ....................15
    **5.5**    CLASSES 5A, 5B, 5C, 5D and 5E —General Unsecured Claims. ................16
    **5.6**    CLASSES 6A, 6B, 6C, 6D and 6E —Intercompany Claims.........................17
    **5.7**    CLASSES 7A, 7B, 7C, 7D and 7E — Holders of Equity Interests in
            the Debtors. ....................................................................................17

ARTICLE VI CONDITIONS PRECEDENT TO OCCURRENCE OF THE EFFECTIVE
            DATE .................................................................................................17
    **6.1**    Conditions Precedent to Consummation of the Plan. .....................17

ARTICLE VII PLAN IMPLEMENTATION ..................................................................18
    **7.1**    Creation of the Liquidating Trust. .................................................18
    **7.2**    Transfer of Liquidating Trust Assets. ............................................18
    **7.3**    Plan is Motion to Transfer Liquidating Trust Assets......................18
    **7.4**    Termination of Directions, Officers, and/or Managers of the Debtors............19
    **7.5**    Corporate Existence. ......................................................................19
    **7.6**    Employee Benefit Plans..................................................................19
    **7.7**    Cancellation and Surrender of Existing Securities; Cancellation of
            Indentures.........................................................................................19
    **7.8**    Release of Liens and Perfection of Liens. ......................................20

i

| | | |
|---|---|---|
| 7.9 | Further Transactions. | 20 |
| 7.10 | Entry of Final Decree. | 20 |
| 7.11 | Retention of Rights to Pursue Causes of Action. | 20 |

ARTICLE VIII THE LIQUIDATING TRUSTS AND THE LIQUIDATING TRUSTEES ........21

| | | |
|---|---|---|
| 8.1 | The Liquidating **TRUSTS.** | 21 |
| 8.2 | Funding of Res of the Trusts. | 21 |
| 8.3 | The Liquidating Trustees. | 21 |
| 8.4 | Retention of Professionals. | 22 |
| 8.5 | Compensation of the Liquidating Trustees. | 22 |
| 8.6 | Liquidating Trust Expenses. | 22 |
| 8.7 | Liability; Indemnification. | 22 |
| 8.8 | Termination. | 23 |
| 8.9 | Authority of the Liquidating Trustees. | 23 |
| 8.10 | Approval of Agreements. | 23 |

ARTICLE IX TRUST OVERSIGHT COMMITTEES .................................................24

| | | |
|---|---|---|
| 9.1 | Creation of Trust Oversight Committees. | 24 |
| 9.2 | Procedures. | 24 |
| 9.3 | Duties and Responsibilities. | 24 |
| 9.4 | Duration. | 24 |
| 9.5 | Compensation and Expenses. | 24 |
| 9.6 | Liability; Indemnification. | 24 |

ARTICLE X DISPUTED CLAIMS, DISPUTED INTERESTS, AND
MISCELLANEOUS DISTRIBUTION PROVISIONS ...............................25

| | | |
|---|---|---|
| 10.1 | Objections. | 25 |
| 10.2 | Amendments to Claims; Claims Filed After the Confirmation Date. | 25 |
| 10.3 | Distributions. | 25 |
| 10.4 | Distributions on Account of Disputed Claims. | 26 |
| 10.5 | Disputed Claim Reserves. | 26 |
| 10.6 | Undeliverable or Unclaimed Distributions. | 26 |
| 10.7 | Allocation of Consideration. | 27 |
| 10.8 | Transmittal of Distributions and Notices. | 27 |
| 10.9 | Method of Cash Distributions. | 27 |
| 10.10 | Distributions on Non-Business Days. | 27 |
| 10.11 | Withholding Taxes. | 28 |
| 10.12 | Set-offs. | 28 |

ARTICLE XI EXECUTORY CONTRACTS AND LEASES ......................................28

| | | |
|---|---|---|
| 11.1 | Rejection of Executory Contracts. | 28 |
| 11.2 | Bar Date for Rejection Damages. | 28 |

ARTICLE XII RELEASES; INDEMNIFICATION; PLAN INJUNCTION ...............................29

| | | |
|---|---|---|
| 12.1 | Releases; Indemnification. | 29 |
| 12.2 | Injunction. | 29 |
| 12.3 | Revocation. | 30 |

ARTICLE XIII MISCELLANEOUS ...........................................................................................31

    **13.1**    Conflicts between Plan and Confirmation Order. ............................................31
    **13.2**    Term of Injunction or Stays. .......................................................................31
    **13.3**    Retention of Jurisdiction. ............................................................................31
    **13.4**    Successors and Assigns. ..............................................................................33
    **13.5**    CramDown ...................................................................................................33
    **13.6**    Modification of the Plan. .............................................................................33
    **13.7**    Withdrawal or Revocation of the Plan. ........................................................33
    **13.8**    Notices. .......................................................................................................34
    **13.9**    Implementation of Plan. ..............................................................................34
    **13.10**  Governing Law. ...........................................................................................34
    **13.11**  Severability. ................................................................................................34
    **13.12**  All Claims. ..................................................................................................35
    **13.13**  Exculpation .................................................................................................35
    **13.14**  Binding Effect. ............................................................................................35

HOUSTON 1050033v.4

Norsk Tillitsmann ASA bond trustee on behalf of bondholders of the Viking Drilling ASA Senior secured Callable Bond Issue 2006/2011 and the Viking Drilling ASA Second Priority Callable Bond Issue 2006/2011 ("<u>NT</u>") and Viking Offshore (USA), Inc., ("<u>Viking Offshore</u>") Viking Producer Inc. ("<u>Viking Producer</u>"), Viking Prospector Inc. ("<u>Viking Prospector</u>"), Viking Century Inc. ("Viking Century") and Viking Drilling ASA ("Viking ASA") as debtors and debtors-in-possession (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this *Joint Non-Consolidating Chapter 11 Plan of Liquidation.*

## ARTICLE I
## INTRODUCTION

### 1.1      Introduction.

NT and the Debtors (collectively, the "<u>Plan Proponents</u>") propose this Plan under Chapter 11 of the Bankruptcy Code.   The Disclosure Statement accompanying the Plan contains historical financial information, a description of each Debtor and its assets and liabilities as well as a summary and description of the Plan.  Holders of Claims against and Interests in a Debtor are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

### 1.2      General Plan Structure; Funding Sources.

The execution and consummation of this Plan will be facilitated through the transfer of the Liquidating Trust Assets to one of five Liquidating Trusts.  One Liquidating Trust will be settled with respect to each Debtor to provide for the disposition of each such Debtor's assets. The Debtors will be dissolved under the Plan or applicable law, on the Effective Date of the Plan.  If the Plan cannot be confirmed because of the treatment of Claims against one of the Debtors, then the Plan Proponents may elect one of the following actions: (a) convert the case of that Deb tor to a liquidation under Chapter 7 of the Bankruptcy Code and proceed to Confirmation of the Plan with respect to the remaining Debtors; (b) modify the Plan so as to obtain Confirmation of the Plan; or (c) withdraw the Plan.

## ARTICLE II
## DEFINITIONS AND INTERPRETATION

### 2.1      Definitions.

**"<u>Administrative Expense</u>"**  shall mean (a) any cost or expense of administration of a kind specified in §§ 364(c)(1), 503(b) or 507(a)(1), including without limitation, the actual, necessary costs and expenses of preserving the Estates and of operating the business of the Debtors, including wages, salaries, commissions, or any other compensation for services rendered after the commencement of the bankruptcy case; (b) compensation for legal or other services, and reimbursement of costs and expenses under §§ 330(a) or 331 or otherwise allowed by the Court; and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930. For the avoidance of doubt, Administrative Expenses include (i) fees earned and expenses incurred by Professionals; and (ii) expenses incurred, if any, by an Entity in making a substantial contribution in the Case pursuant to §§ 503(b)(3) or (4).

1

"**Allowed**" shall mean, with respect to Claims and Interests, (a) any Claim against or Interest in a Debtor, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely Filed proof of Claim has been Filed, (c) any Interest registered in a Debtor's books and records as of the Petition Date or (d) any Claim allowed pursuant to the Plan and, in each such case in (a), (b) and (c) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such an objection is so Filed and the Claim or Interest shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

"**Ballot**" shall mean the ballot form upon which holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan.

"**Balloting Deadline**" shall mean October __, 2009 at 5:00 p.m. (prevailing Central Time), which is the deadline established by the Court for the submission of Ballots to NT in accordance with the Voting Procedures. Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, New York, New York 10017; phone: (646) 282-2500; fax: (646)282-2501, will be acting as the Balloting Agent to assist in the transmission of voting materials and the tabulation of votes with respect to the plan.

"**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as subsequently amended, principally codified at 11 U.S.C. § 101 *et seq.* Unless otherwise stated herein or in the Disclosure Statement, all section (§) references contained in the Plan and Disclosure Statement are to the Bankruptcy Code.

"**Bankruptcy Court**" or "**Court**" shall mean the United States Bankruptcy Court for the Southern District of Texas, or, if such court ceases to have jurisdiction over the Cases, such court that exercises jurisdiction over the Cases.

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075 as subsequently amended, and, where appropriate, the Local Bankruptcy Rules of the Bankruptcy Court.

"**Bar Date**" shall mean July 16, 2008, which was established by notice of this Court as to the date for the Filing of proofs of claim and proofs of interest by all parties other than governmental units, and August 27, 2008, for the Filing of proofs of claims by all governmental units.

"**Business Day**" shall mean any day excluding Saturday, Sunday, or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which the law authorizes commercial banks in the State of Texas to be closed.

"**Cases**" shall mean the voluntary cases filed by the Debtors, currently pending in the Bankruptcy Court, under Chapter 11 of the Bankruptcy Code and being jointly administered under Case No. 08-31219.

"**Cash**" shall mean cash and cash equivalents that evidence immediately available funds, whether in U.S. Dollars or Norwegian Kroner.

"**Causes of Action**" shall mean any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and Claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a) Chapter 5 Causes of Action; (b) damages (general, exemplary, or both) relating to or based upon (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based upon alter ego or other liability theories; (c) damages based upon any other claim of the Debtor, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) any claims of the Debtor for equitable subordination under § 510(c) or under other applicable laws; (e) any claim of the Debtor to recharacterize one or more Claims as Interests; and (f) any unresolved objection to any Disputed Claim.

"**Chapter 5 Cause of Action**" shall mean any Cause of Action arising under §§ 510, 544 through 551, or 553 of the Bankruptcy Code.

"**Chapter 7**" shall mean chapter 7 of the Bankruptcy Code.

"**Chapter 11**" shall mean chapter 11 of the Bankruptcy Code.

"**Claim**" shall mean a claim against a Debtor, whether or not asserted, as defined in § 101(5), for whatever right to payment or other remedy the Creditor may have against the Debtor.

"**Claims Objection Deadline**" shall mean the later of (a) that date which is ninety (90) days following the Effective Date, and (b) thirty (30) days after the Filing of a proof of Claim or Interest by a Creditor, on or after the Effective Date.

"**Class**" shall mean any group of substantially similar Claims or Interests classified by the Plan pursuant to § 1122.

"**Confirmation**" shall mean the entry of an order by the Court confirming this Plan, with respect to any one or more of the Debtors.

"**Confirmation Date**" shall mean the date of the entry of the Confirmation Order by the Bankruptcy Court.

"**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such may be continued from time to time.

"**Confirmation Order**" shall mean the order signed by the Court and caused to be entered that confirms this Plan pursuant to § 1129.

"**Creditor**" shall mean any Entity that is the holder of a Claim that arose on or before the Petition Date or a Claim of the kind specified in § 502(g), 502(h) or 502(i), against any one or more of the Debtors.

"**Debtors**" shall mean the entities listed in Paragraph 1.1 above.

"**Disallowed**" shall mean excepted from allowance under § 502 (b) of the Bankruptcy Code.

"**Disclosure Statement**" shall mean that certain *Disclosure Statement for Joint Non-Consolidating Chapter 11 Plan of Liquidation* accompanying this Plan, as approved by the Bankruptcy Court for distribution pursuant to § 1125, together with any amendments or modifications thereto.

"**Disputed Claim**" shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been Filed, or deemed Filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely Filed and has not been: (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim shall be considered a Disputed Claim (A) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtor in its Schedules, to the extent of such excess; (B) in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent or unliquidated in its Schedules; or (C) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules.

"**Disputed Claim Reserve Account**" shall mean that account into which a Disputed Claim Reserve Amount shall be deposited in accordance with the Liquidating Trust Agreement for the Debtor against which such claim is asserted.

"**Disputed Claim Reserve Amount**" shall mean that portion of the property of the Liquidating Trust that would be allocated for distribution to Disputed Claims of a particular class if all such Disputed Claims were Allowed Claims.

"**Distribution Date**" shall mean the date or dates on which a Liquidating Trustee of a Liquidating Trust settled by one of the Debtors mails a check or draft in payment of an amount due under this Plan.

"**Distributable Cash**" shall mean Cash on hand in a Liquidating Trust settled by one of the Debtors after payment of or establishment of reserves, including a Disputed Claims Reserve Account, for all accrued or anticipated expenditures, including distributions to senior classes.

"**Effective Date**" shall mean a Business Day selected by NT that is the later of (a) a day that is not less than eleven (11) days after the Confirmation Date and (b) the first Business Day on which all conditions to the occurrence of the Effective Date have been satisfied or duly waived.

4

"**Employment Agreement**" shall mean an Agreement between the Liquidating Trustees and any one or more of the following individuals: W. Dennis Heagney, Youllonda Driver, Niels Erik Feilberg, Ole Geir Hagen and Erik Wahlstrom, providing for any one or more of such individuals to provide services for the benefit of the Liquidating Trusts.

"**Entity**" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit, or other entity including the Debtors and the United States Trustee, whether singular or plural.

"**Estates**" shall mean the bankruptcy estate of each Debtor pursuant to § 541 of the Bankruptcy Code.

"**Exculpated Persons**" shall mean the entities included in Section 11.13 of the Plan.

"**Face Amount**" shall mean (a) with respect to a particular Claim, (i) if the Claim is listed in the Schedules and the holder of such Claim has not Filed a proof of Claim within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the amount of such Claim that is listed in the Schedules as not disputed, contingent or unliquidated; or (ii) if the holder of such Claim has Filed a proof of Claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the liquidated amount stated in such proof of Claim, or such amount as is determined by the Final Order of the Bankruptcy Court; (b) in the case of an Administrative Expense, the liquidated amount set forth in any application Filed with respect thereto, or the amount set forth in a Debtor's books and records or such amount as is determined pursuant to a Final Order; or (c) in all other cases, zero or such amount as shall be fixed or estimated pursuant to a Final Order.

"**File**" or "**Filed**" or "**Filing**" shall mean file or filed or filing with the Clerk of the Bankruptcy Court in these Cases.

"**Final Order**" shall mean an order or judgment of the Bankruptcy Court that has been entered by the Clerk of the Bankruptcy Court on the docket in a Case and that has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for writ of *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for writ of *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or writ of *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause such order not to be a Final Order.

**"First Lien Bond Claims"** shall mean claims arising under that certain Viking Drilling ASA Senior Secured Callable Bond Issue 2006/2011.

**"First Lien Loan Agreement"** shall mean the Loan Agreement dated September 26, 2006, between Viking Drilling ASA and Norsk Tillitsmann ASA on behalf of the bondholders of the Viking Drilling ASA Senior Secured Callable Bond Issue 2006/2011.

**"General Unsecured Claim"** shall mean every Claim against a Debtor that is not an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or a Miscellaneous Secured Claim.

**"Impaired"** shall have the meaning set forth in § 1124.

**"Indemnified Persons"** shall mean the Entities described in Article 12 of this Plan.

**"Interest"** shall mean any equity interest in the Debtors, including, but not limited to, all options or other rights to obtain such an interest or share of the Debtors.

**"Lien"** shall mean any security interest, charge against, encumbrance upon or other interest in property, the purpose of which is to secure payment of a debt or performance of an obligation.

**"Liquidating Trustees"** shall mean the Entities appointed and designated as trustees to administer the assets of each of the Debtors that shall be transferred to the Liquidating Trusts pursuant to the Plan and any successor appointed as provided in the Plan and in the Liquidating Trust Agreement.

**"Liquidating Trusts"** shall mean the five trusts established under this Plan for the benefit of the Liquidating Trust Beneficiaries, including (a) the Viking Offshore Trust with respect to the assets of Viking Offshore, (b) the Viking Producer Trust with respect to the assets of Viking Producer, (c) the Viking Prospector Trust with respect to the assets of Viking Prospector, (d) the Viking Century Trust with respect to the assets of Viking Century, and (e) the Viking ASA Trust with respect to the assets of Viking ASA, all as more fully described in the Liquidating Trust Agreement.

**"Liquidating Trust Agreement"** shall mean the written Agreement among any of the Debtors, as grantors, the Liquidating Trustees and the Entities that shall be appointed under the plan to constitute the Trust Oversight Committees, all as otherwise provided in the plan.

**"Liquidating Trust Assets"** shall mean all the assets of each Debtor to be transferred to the Liquidating Trusts to be created with respect to each such Debtor.

**"Liquidating Trust Beneficiaries"** shall mean holders of (a) Allowed Class 1A-6A, with respect to Viking Offshore Trust claims, (b) Allowed Class 1B-6B, with respect to Viking Producer Trust claims, (c) Allowed Class 1C-6C, with respect to Viking Prospector Trust claims, (d) Allowed Class 1D-6D, with respect to Viking Century Trust claims, and (d) Allowed Class 1E-6E, with respect to Viking ASA claims.

6

"**Maritime Lien Secured Claim**" shall mean any claim based on a maritime Lien that was filed and perfected against a Rig under 46 U.S.C. Chapter 13 and, as necessary, § 546 of the Bankruptcy Code.

"**Miscellaneous Secured Claim**" shall mean any Secured Claim other than the Secured Claims classified in Classes 2A, 2B, 2C, 2D, 2E, 3A, 3B, 3C, 3D and 3E hereof.

"**Petition Date**" shall mean February 29, 2008, the date on which the Cases were commenced.

"**Plan**" shall mean this *Joint Non-Consolidating Chapter 11 Plan of Liquidation*, dated September ____, 2009, including any amendments or modifications hereto as may hereafter be Filed in accordance with the requirements of § 1127.

"**Plan Documents**" shall mean the agreements, documents and instruments entered into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan (including the Liquidating Trust Agreement and all documents necessary to consummate the transactions contemplated in the Plan and by the Liquidating Trust Agreement), copies of which shall be available to parties in interest upon request to Debtors' counsel.

"**Post Confirmation Bar Date**" shall mean means 4:00 p.m., prevailing Central time, on the first Business Day, that shall be thirty days (30) after the Effective Date.

"**Priority Non-Tax Claim**" shall mean a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under § 507(a).

"**Priority Tax Claim**" shall mean a Claim entitled to priority in payment pursuant to §§ 502(i) and 507(a)(8).

"**Professional**" shall mean each Entity that is either (a) employed pursuant to an order of the Court in accordance with §§ 327 or 1103 providing for compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 or 331, or (b) seeking compensation and reimbursement pursuant to §§ 503(b)(2) or (4).

"**Professional Fee Claim**" shall mean an Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

"**Ratable Proportion**" shall mean, with reference to any distribution on account of any Claim in any Class or subclass, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Claim bears to the aggregate amount of Claims in the same Class or subclass, as applicable.

"**Rejection Claim**" shall mean any Claim arising from the rejection of any executory contract or unexpired lease, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with § 502(b)(6) or (b) an employee for damages resulting from the rejection of an employment

HOUSTON 1050033v.4

agreement as any such Claim shall be calculated in accordance with § 502(b)(7).  A Rejection Claim shall constitute a General Unsecured Claim.

"**Rigs**" means the VIKING CENTURY, the VIKING PROSPECTOR and the VIKING PRODUCER.

"**Sales Proceeds**" shall mean the proceeds of any sale of the Rigs or any of them after deduction of any final purchase price adjustments and payment of all costs, expenses and commissions arising from a sale of one or any of the Rigs.

"**Schedules**" shall mean the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtors under § 521 and Bankruptcy Rule 1007 on April 15, 2008, as amended from time to time.

"**Second Lien Bond Claims**" shall mean claims arising under that certain "Viking Drilling ASA Second Priority Callable Bond Issue 2007/2012 with Warrants."

"**Second Lien Loan Agreement**" shall mean the Loan Agreement dated December 17, 2007, between Viking Drilling ASA and Norsk Tillitsmann ASA on behalf of the bondholders and warrantholders of the Viking Drilling ASA Second Priority Callable Bond Issue 2006/2011.

"**Secured Claim**" shall mean a Claim that arose before the Petition Date, to the extent secured by a Lien that is valid, perfected, and enforceable under applicable law, that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and that is Allowed in the Case.

"**Tax Code**" shall mean the Internal Revenue Code of 1986, as amended.

"**Trust Oversight Committees**" shall mean the committees established upon the Effective Date, comprised of representatives of Creditors who are parties to the Liquidating Trust Agreement and who will be responsible to advise, monitor and supervise the administration of the Liquidating Trusts and to take actions a set forth in this Plan, the Liquidating Trust Agreement, and the Confirmation Order or as may be otherwise authorized by the Bankruptcy Court.

"**Unclaimed Property**" shall mean any Cash or other property unclaimed made in respect of the relevant Allowed Claim or Allowed Interest.  Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to an address of a holder of an Allowed Claim or Interest and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no address to mail or deliver such property was available.

"**Unimpaired**" shall mean a Claim that is not Impaired.

"**Voting Procedures**" means the procedures for submitting a Ballot in which a holder of a Claim votes for or against the Plan as described in Article II of the Disclosure Statement.

"**Voting Period**" means the period from the date of approval of the Disclosure Statement by the Bankruptcy Court through and including the Balloting Deadline, during which time holders of Claims or Interests must submit a Ballot.

### 2.2 Interpretation, Rules of Construction, and Other Terms

(a)     Any term used in this Plan not defined herein, but used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to such term by the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

(b)     The words "herein," "hereto," "hereunder," "thereunder" and others of similar import, refer to the Plan as a whole and not to any particular article, section, or clause contained in this Plan.

(c)     Unless specified otherwise in a particular reference, a reference in this Plan to an article or section is a reference to that article or section of this Plan.

(d)     Unless otherwise provided for herein, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

(e)     As contextually appropriate, each term stated in either the singular or plural shall include both the singular and the plural.

(f)     In addition to the foregoing, the rules of construction set forth in § 102 of the Bankruptcy Code shall apply to this Plan.

(g)     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(h)     All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when Filed with the Court.

(i)     **ALL PROVISIONS OF THIS PLAN AND ALL DEFINITIONS CONTAINED HEREIN SHALL APPLY TO EACH CREDITOR, INTEREST HOLDER, AND DEBTOR AND ITS ESTATE, UNLESS EXPRESSLY SPECIFIED HEREIN.**

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1 Administrative Expenses and Priority Tax Claims

As provided in § 1123(a), Administrative Expenses and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims and Expenses shall be treated separately as unclassified claims on the terms set forth in Article V of the Plan.

HOUSTON 1050033v.4

### 3.2      Classes of Claims and Interests

A Claim or Interest is in a particular Class only to the extent the Claim or Interest is an Allowed Claim or Allowed Interest as defined herein.  For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (other than Administrative Expenses and Priority Tax Claims) and Interests shall be classified as follows:

### Chart 1.A - VIKING OFFSHORE

| Class | Type of Allowed Claim or Interest | Treatment | Status | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Paid in full in Cash | | 100% |
| -- | Priority Tax Claims | Paid in full in Cash | | 100% |
| 1A | Priority Non-Tax Claims | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 2A | Miscellaneous Secured Claims (Ad valorem taxes; M&M liens; other) | Paid in full in Cash | Unimpaired.  Deemed to accept the Plan | 100% |
| 3A | Secured Claims (Maritime Liens) | None | No Allowed Claims | N/A |
| 4.1A | First Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 4.2A | Second Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 5A | General Unsecured Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <1% |
| 6A | Intercompany Claims | Treated under the Liquidating Trust | Impaired. | 0% |
| 7A | Interests | Canceled | Impaired. Deemed to reject the Plan | 0% |

### Chart 1.B - VIKING PRODUCER

| Class | Type of Allowed Claim or Interest | Treatment | Status | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Paid in full in Cash | | 100% |
| -- | Priority Tax Claims | Paid in full in Cash | | 100% |
| 1B | Priority Non-Tax Claims | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 2B | Miscellaneous Secured Claims (Ad valorem taxes; M&M liens; other) | Paid in full in Cash | Unimpaired.  Deemed to accept the Plan | 100% |
| 3B | Secured Claims (Maritime Liens) | Treated under the Liquidating Trust | Impaired. Entitled to vote | 100% |
| 4.1B | First Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 4.2B | Second Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 5B | General Unsecured Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote. | <1% |

| 6B | Intercompany Claims | Treated under the Liquidating Trust | Impaired. Deemed to reject the Plan | 0% |
| 7B | Interests | Canceled | Impaired. Deemed to reject the Plan | 0% |

## Chart 1.C - VIKING PROSPECTOR

| Class | Type of Allowed Claim or Interest | Treatment | Status | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Paid in full in Cash | | 100% |
| -- | Priority Tax Claims | Paid in full in Cash | | 100% |
| 1C | Priority Non-Tax Claims | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 2C | Miscellaneous Secured Claims (Ad valorem taxes; M&M liens; other) | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 3C | Secured Claims (Maritime Liens) | Treated under the Liquidating Trust | Impaired. Entitled to vote | 100% |
| 4.1C | First Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 4.2C | Second Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 5C | General Unsecured Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <1% |
| 6C | Intercompany Claims | Disallowed | Impaired. Deemed to reject the Plan | 0% |
| 7C | Interests | Canceled | Impaired. Deemed to reject the Plan | 0% |

## Chart 1.D - VIKING CENTURY

| Class | Type of Allowed Claim or Interest | Treatment | Status | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Paid in full in Cash | | 100% |
| -- | Priority Tax Claims | Paid in full in Cash | | 100% |
| 1D | Priority Non-Tax Claims | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 2D | Miscellaneous Secured Claims (Ad valorem taxes; M&M liens; other) | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 3D | Secured Claims (Maritime Liens) | Treated under the Liquidating Trust | Impaired. Entitled to vote | 100% |
| 4.1D | First Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 4.2D | Second Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 5D | General Unsecured Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <1% |

11

| 6D | Intercompany Claims | Treated under the Liquidating Trust | Impaired. | 0% |
| 7D | Interests | Canceled | Impaired. Deemed to reject the Plan | 0% |

### Chart 1.E – VIKING ASA

| Class | Type of Allowed Claim or Interest | Treatment | Status | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Paid in full in Cash | | 100% |
| -- | Priority Tax Claims | Paid in full in Cash | | 100% |
| 1E | Priority Non-Tax Claims | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 2E | Miscellaneous Secured Claims (Ad valorem taxes; M&M liens; other) | Paid in full in Cash | Unimpaired. Deemed to accept the Plan | 100% |
| 3E | Secured Claims | None | N/A | N/A |
| 4.1E | First Lien Bond Claims | Treated under Liquidating Trust | Impaired. Entitled to vote | <50% |
| 4.2E | Second Lien Bond Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <50% |
| 5E | General Unsecured Claims | Treated under the Liquidating Trust | Impaired. Entitled to vote | <1% |
| 6E | Intercompany Claims | Treated under the Liquidating Trust | Impaired. Deemed to reject the Plan | 0% |
| 7E | Interests | Canceled | Impaired. Deemed to reject the Plan | 0% |

### ARTICLE IV
### TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

**4.1    Administrative Expenses.**

(a)    **Treatment.**  Unless otherwise provided for herein, each holder of an Allowed Administrative Expense (including the compensation and reimbursement of expenses of Professionals) shall be paid by the Liquidating Trustees from Liquidating Trust Assets transferred by one of the Debtors to the Liquidating Trust established with respect to such Debtor the amount of such holder's unpaid Allowed Claim in one cash payment on the later of (i) the Effective Date (or as soon as reasonably practicable) and (ii) fifteen Business Days following the date on which such Administrative Expense becomes Allowed.

(b)    **General Administrative Expenses**.  Except as otherwise set forth in this Article IV, each holder of an Administrative Expense shall be required to file with the Bankruptcy Court, and to serve upon all parties required to receive notice, an application for allowance of such Administrative Expense on or before the Post-Confirmation Bar Date or be forever barred and discharged from doing so.  The Administrative Expenses subject to the Post-Confirmation Bar Date include (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

12

legal, equitable, secured, or unsecured, and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. An Administrative Expense with respect to which an application has been properly and timely filed pursuant to this Section 4.1 shall be treated and paid as an Administrative Expense only to the extent allowed by a Non-Appealable Order; *provided, however,* that Administrative Expenses incurred and paid by any Debtor in the ordinary course during the Cases shall be deemed Allowed — and the party asserting such Administrative Expense shall not be required to submit applications for approval of such Administrative Expenses.

(c)     **Professional Fee Claims.** Each Professional whose retention with respect to the Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Post-Confirmation Bar Date. The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Section 4.1 of this Plan shall be treated and paid as an Administrative Claim only to the extent allowed by a Final Order. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Cases has not been approved by the Bankruptcy Court.

(d)     <u>**Trade Payables.**</u> All trade payables and current liabilities of the Debtors, excluding payments to utility service providers, that (i) arose in the ordinary course of business on or after the Petition Date, including payroll and salaries (but excluding payroll taxes) which have accrued prior to the Effective Date but were not yet due as of the Effective Date, and (ii) otherwise qualify as Administrative Expenses shall be paid by the Estate or the Liquidating Trust settled with respect to the Debtor on the Effective Date (or as soon as reasonably practicable thereafter). Notwithstanding the foregoing, including the provisions of Section 4.1(c) hereof, the reasonable costs and expenses of NT, including legal fees and expenses, shall be allowed as an Administrative Expense of these Cases pursuant to Sections 503 and 507 of the Bankruptcy Code and paid pursuant to this Section 4.1 (d).

### 4.2     Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim may receive on account of such Allowed Priority Tax Claim from the Liquidating Trust of the Debtor against which the Claim has been asserted either (a) payment in full in Cash of such Allowed Priority Tax Claim on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) regular installment payments in Cash, over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim; or (c) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the appropriate Liquidating Trustee *provided that* such treatment is on terms more favorable to the Debtor than the treatment set forth in clauses (a) and (b). To the extent interest is required to be paid on any

13

Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law.

### 4.3     Payment of Statutory Fees.

All fees payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, and (b) to the United States Trustee, shall be paid in Cash in full by each of the Liquidating Trustees on the Effective Date (or as soon as reasonably practicable after such fees become due) from the Liquidating Trust of the Debtor owing the fees.

### 4.4     Disallowance of Special Taxes.

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in § 1146.

### ARTICLE V
### TREATMENT OF CLASSES

### 5.1     CLASSES 1A, 1B, 1C, 1D and 1E — Priority Non-Tax Claims.

(a)     Classes 1A, 1B, 1C, 1D and 1E shall consist of all Priority Non-Tax Claims. Each holder of an Allowed Priority Non-Tax Claim against any of the Debtors' Estates shall either (i) be paid by the Liquidating Trustees from the Liquidating Trust Assets held with respect to the appropriate Debtor, the amount of such holder's Allowed Priority Non-Tax Claim in one Cash payment equal to 100% of the amount of the Claim on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) fifteen Business Days following the date on which the Claim becomes Allowed by a Final Order; or (ii) receive such other treatment more favorable to the Debtor as may be agreed upon in writing by the relevant Liquidating Trustee and such holder.

(b)     Classes 1A, 1B, 1C, 1D and 1E are Unimpaired.   Holders of Allowed Claims in those Classes shall be deemed to have accepted the Plan, and votes to accept or reject the Plan will not be solicited from holders of them.

### 5.2     CLASSES 2A, 2B, 2C, 2D and 2E — Miscellaneous Secured Claims.

(a)     Classes 2A, 2B, 2C, 2D and 2E shall consist of Miscellaneous Secured Claims. Each holder of an Allowed Class 2 Claim shall either (i) be paid by the appropriate Liquidating Trustee from the Liquidating Trust Assets held with respect to the appropriate Debtor, the amount of such holder's Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) fifteen Business Days following the date on which the Claim becomes Allowed by a Final Order; or (ii) receive such other treatment more favorable to the Debtor as may be agreed upon in writing by the appropriate Liquidating Trustee and such holder.

14

(b)     Classes 2A, 2B, 2C, 2D and 2E are Unimpaired.  Holders of Allowed Claims in those Classes shall be deemed to have accepted the Plan, and votes to accept or reject the Plan will not be solicited from them.  Holders of Class 2A, 2B, 2C, 2D and 2E Claims shall release any and all Liens encumbering the Debtors' property at the time of payment.

**5.3     CLASSES — 3C, 3D and 3E — Secured Claims of Maritime Lien Holders.**

(a)     Classes — 3C, 3D and 3E shall consist of Allowed Maritime Lien Secured Claims.  Each holder of an Allowed Class 3C, 3D and 3E  Secured Claim shall either (i) be paid by the Liquidating Trustee from the Liquidating Trust Assets held with respect to the appropriate Debtor, the amount of such holder's Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) fifteen Business Days following the date on which the Claim becomes Allowed by a  Final Order; or (ii) receive such other treatment more favorable to the Estate of the appropriate Debtor as may be agreed upon in writing by the Liquidating Trustee of the appropriate Liquidating Trust and such holder.

(b)     Classes — 3C, 3D and 3E are Impaired.  Holders of Allowed Claims in those Classes shall be entitled to vote to accept or reject the Plan.

**5.4     CLASSES 4.1A, 4.1B, 4.1C, 4.1D and 4.1E and CLASSES 4.2A, 4.2B, 4.2C, 4.2D and 4.2E — Secured Claims of Bondholders.**

5.4.1   First Lien Bond Claims

(a)     Classes 4.1A, 4.1B, 4.1C, 4.1D and 4.1E shall consist of holders of First Lien Bonds.  On the Effective Date, the First Lien Bond Claims shall be Allowed to the extent of the value of the collateral securing their repayment, subject to adjustment based on, among other things, any and all interest, fees, and other expenses to which the First Lien Bondholders may be entitled under the First Lien Loan Agreement and Orders of the Bankruptcy Court.  On the Effective Date (or as soon as reasonably practicable thereafter), each holder of an allowed First Lien Bond Claim shall be paid by the appropriate Liquidating Trust from the Liquidating Trust Assets held by the Liquidating Trustees an initial Cash distribution from Distributable Cash.

(b)     The Liquidating Trustees shall make subsequent Cash distributions equal to a holder's Ratable Proportion if, as and when there is sufficient Distributable Cash, after payment of Allowed Class 1A, 1B, 1C, 1D and 1E  Secured Claims, Allowed Class 2A, 2B, 2C, 2D and 2E Secured Claims, Allowed Class 3A, 3B, 3C, 3D and 3E Secured Claims and costs incurred with respect to administration of the Liquidating Trusts to make such a distribution, all in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(c)     If the amounts distributed under subsections (a) and (b) exceed 100% of the Allowed Class 4.1A, 4.1B, 4.1C, 4.1D and 4.1E Secured Claims, then each holder of such a Claim will be entitled to receive such interest and other payments as may be required under the First Lien Loan Agreement up to the lesser of (i) the amount of the remaining Distributable Cash, and (ii) all amounts due under that Agreement.

(d)     Classes 4.1A, 4.1B, 4.1C, 4.1D and 4.1E are Impaired.  Holders of Allowed Claims in those Classes shall be entitled to vote to accept or reject the Plan.

15

5.4.2   Second Lien Bond Claims

(a)      Classes 4.2A, 4.2B, 4.2C, 4.2D and 4.2E shall consist of holders of Second Lien Bonds. Each holder of an Allowed Class 4.2 Secured Claim On the Effective Date, the Second Lien Bond Claims shall be Allowed to the extent of the value of the collateral securing their repayment, subject to adjustment based on, among other things, any and all interest, fees, and other expenses to which the Second Lien Bondholders may be entitled under the Second Lien Loan Agreement and Orders of the Bankruptcy Court. On the Effective Date (or as soon as reasonably practicable thereafter), each holder of an allowed Second Lien Bond Claim shall be paid by the appropriate Liquidating Trust from the Liquidating Trust Assets held by the Liquidating Trustees with respect to a Debtor an initial Cash distribution from Distributable Cash.

(b)      The Liquidating Trustees shall make a subsequent Cash distribution equal to the holder's Ratable Proportion if, as and when there is sufficient Distributable Cash, after payment of Allowed Class Allowed Class 1A, 1B, 1C, 1D and 1E Secured Claims, Allowed Class 2A, 2B, 2C, 2D and 2E Secured Claims, Allowed Class 3A, 3B, 3C, 3D and 3E Secured Claims and Allowed Class 4.1A, 4.2B, 4.2C, 4.2D and 4.2E Claims and costs incurred with respect to the administration of the affected Liquidating Trust to make such a distribution, all in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(c)      If the amounts distributed under subsection (a) together with the remaining Distributable Cash exceed 100% of the Allowed Class 4.2 Secured Claims, then each holder of such a Claim will be entitled to receive such interest and other payments as may be required under the Second Lien Loan Agreement up to the lesser of (i) the amount of the remaining Distributable Cash, and (ii) all amounts due under that Agreement.

(d)      Classes 4.2A, 4.2B, 4.2C, 4.2D and 4.2E are Impaired.   Holders of Allowed Claims in those Classes shall be entitled to vote to accept or reject the Plan.

**5.5      CLASSES 5A, 5B, 5C, 5D and 5E —General Unsecured Claims.**

(a)      Classes 5A, 5B, 5C, 5D and 5E shall consist of General Unsecured Claims of the respective Debtors. Each holder of an Allowed General Unsecured Claim against any of the  Estates shall receive in exchange for and in full satisfaction of such Claim its Ratable Proportion of: (i) the assets of the Liquidating Trust settled with respect to the Debtor against which such Claim is Allowed on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) the date such Claim becomes an Allowed Claim by a Final Order, and (ii) Distributions of Available Cash on account of such Claim after payment of Allowed Claims in all previously numbered Classes, subject to other applicable terms of this Plan and the Liquidating Trust Agreement.

(b)      Classes 5A, 5B, 5C, 5D and 5E are Impaired.  Holders of Allowed Claims in those Classes shall be entitled to vote to accept or reject the Plan.

**5.6      CLASSES 6A, 6B, 6C, 6D and 6E —Intercompany Claims.**

(a)      Classes 6A, 6B, 6C, 6D and 6E shall consist of all Allowed Claims between or among the Debtors.  No distributions shall be made in respect of those Claims.

(b)      Holders of Intercompany Claims shall not be entitled to receive any Distributable Cash.

(c)      Classes 6A, 6B, 6C, 6D and 6E are Impaired.  Holders of Class 6A, 6B, 6C, 6D and 6E Claims shall be deemed to have rejected the Plan, and votes to accept or reject the Plan will not be solicited from holders of Intercompany Claims.

**5.7      CLASSES 7A, 7B, 7C, 7D and 7E — Holders of Equity Interests in the Debtors.**

(a)      Classes 7A, 7B, 7C, 7D and 7E shall consist of the Allowed Interests in the Debtors.  All Interests shall be canceled and extinguished on the Effective Date.

(b)      Holders of Equity Interests the Debtors shall not be entitled to receive any Distributable Cash or retain any property under this Plan.

(c)      Classes 7A, 7B, 7C, 7D and 7E are Impaired.  Holders of Interests shall be deemed to have rejected the Plan, and votes to accept or reject the Plan will not be solicited from such holders.

## ARTICLE VI
## CONDITIONS PRECEDENT TO OCCURRENCE OF THE EFFECTIVE DATE

**6.1      Conditions Precedent to Consummation of the Plan.**

In addition to any other conditions set forth in this Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)      The Confirmation Order, in a form and substance reasonably acceptable to NT and the Debtors and which shall include one or more findings that NT and the Debtors herein acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall have been entered and become a Final Order in form and substance satisfactory to NT and to the Trust Oversight Committees;

(b)      The Liquidating Trust Agreement and all other related documents shall have been fully executed;

(c)      The Liquidating Trustees shall be identified by the Trust Oversight Committees;

(d)      The Bankruptcy Court shall have determined that the Liquidating Trustees are or will be duly authorized to take the actions contemplated by this Plan and the Liquidating

Trust Agreement, which approval and authorization may be set forth in the Confirmation Order; and

(e)    **IT IS INTENDED THAT A SINGLE ENTITY WILL BE APPOINTED LIQUIDATING TRUSTEES FOR ALL OF THE LIQUIDATING TRUSTS CREATED UNDER THIS PLAN AND THAT A SINGLE GROUP OF ENTITIES WILL SERVE ON ALL OF THE TRUST OVERSIGHT COMMITTEES THAT WILL BE APPOINTED UNDER THIS PLAN, subject to any requirements imposed by Norwegian law.**

## ARTICLE VII
## PLAN IMPLEMENTATION

### 7.1    Creation of the Liquidating Trust.

On the Effective Date, each of the Liquidating Trusts described herein shall be formed pursuant to this Plan, and the Liquidating Trust Agreement-- shall be executed by the Liquidating Trustees. The Liquidating Trustees shall take such actions as are necessary under applicable law to effect the terms and provisions of the Plan and the Liquidating Trust Agreement, including the limitation of the winding up of the affairs of the Debtors under applicable law.

### 7.2    Transfer of Liquidating Trust Assets.

On the Effective Date, each Debtor shall transfer all of the right, title and interest in its assets to its Liquidating Trusts established under this Plan to receive each individual Debtor's assets, including and not by way of limitation, title to the VIKING PRODUCER, VIKING PROSPECTOR and VIKING CENTURY, together with all equipment on board or in storage facilities.

### 7.3    Plan is Motion to Transfer Liquidating Trust Assets.

This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105, 363, and 365 to transfer and assign to, and vest in, the respective Liquidating Trusts any and all Liquidating Trust Assets as of the Effective Date. Any objections to such transfer, assignment, and vesting must be made as a timely objection to Confirmation of this Plan, to be heard at the Confirmation Hearing.

After the Effective Date, the Liquidating Trustees may present an Order or Orders to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where any Liquidating Trust Assets are or were located, which provide that such property is conveyed to the appropriate Liquidating Trust. The Order or Orders may designate all Liens, Claims, encumbrances, or other interests from which and/or from which the property is being transferred, assigned and vested. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order. Any Person having a Lien, Claim, encumbrance, or other interest against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such

Liquidating Trust Assets to the appropriate Liquidating Trust by failing to object to confirmation of this Plan, except as otherwise provided in this Plan.

**7.4      Termination of Directions, Officers, and/or Managers of the Debtors.**

On Effective Date, all of the directors, officers, and/or managers of the Debtors shall be deemed terminated.

**7.5      Corporate Existence.**

On the Effective Date, or as soon thereafter as deemed appropriate by the Liquidating Trustees, the Debtors, except for Viking Drilling, shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; *provided, however,* that the Liquidating Trustees shall file with the appropriate authorities a certificate of cancellation of the corporate charter of each of the Debtors, except for Viking Drilling except for Viking Drilling,. From and after the Effective Date, neither the Liquidating Trustees nor the Debtors shall be required to file any document, or take any other action, to withdraw its business operation from any state or county in which a Debtor previously conducted its business operations.

**7.6      Employee Benefit Plans.**

All employee benefit plans, policies and programs implemented by the Debtors and not previously terminated by the Debtors or otherwise addressed by a separate Final Order as of the Effective Date shall be terminated as of the Effective Date. Except as otherwise provided in the Plan, employee benefit plans, policies, and programs shall include all health care plans, disability plans, severance benefit plans, life, accidental death and dismemberment insurance plans (to the extent not executory contracts assumed under the Plan) and pension/retirement plans, but shall exclude all employees' equity or equity-based incentive plans, which are Interests that shall be canceled pursuant to the terms hereof. If the termination of any such plan, policy or program gives rise to a Claim by an employee, such Claim, to the extent that it is timely Filed, shall be forever barred and shall not be enforceable against the Debtors or their Estates, affiliates, successors, estates or properties, unless a proof of Claim is Filed and served on the Liquidating Trustees within thirty (30) days after the Effective Date.

**7.7      Cancellation and Surrender of Existing Securities; Cancellation of Indentures.**

(a)      *Cancellation of Existing Securities and Agreements.*  On the Effective Date, all promissory notes, stock certificates or other instruments evincing a Claim or Interest shall be canceled and the holders thereof shall have no rights by reason thereof, and such instruments shall evince no rights, except the right to receive the distributions, if any, to be made to holders of such instruments under the Plan and the Liquidating Trust Agreement.

(b)      *Surrender of Existing Securities.*  As a condition to receiving any distribution under the Plan and the Liquidating Trust Agreement, each holder of a promissory note, stock certificate, or other instrument evidencing a Claim or Interest must surrender such promissory note, stock certificate, or other instrument to the Liquidating Trustees.

**7.8      Release of Liens and Perfection of Liens.**

All valid liens against any of the property transferred to the Liquidating Trusts shall remain in full force and effect, provided however, that the Confirmation Order shall grant the Liquidating Trustees full authority to provide the buyers of such assets full legal title, free and clear from all liens, claims, encumbrances or interests in the assets sold, with any such lien, claim, encumbrance or interest attaching to the proceeds.

**7.9      Further Transactions.**

On the Effective Date, the Liquidating Trustees and each Debtor, as applicable, shall execute and deliver such further documents, instruments and agreements as are necessary to effectuate and further evidence the terms and conditions of the Plan and give effect to the Liquidating Trust Agreement.

**7.10      Entry of Final Decree.**

As soon as is practicable after the last Distribution Date with respect to assets held in any one or more of the Liquidating Trusts, the Liquidating Trustees shall File an application with the Clerk of the Court requesting the entry of a final decree closing the Cases.

**7.11      Retention of Rights to Pursue Causes of Action.**

(a)      Pursuant to § 1123(b)(3), as of the Effective Date, the Liquidating Trustees shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action (including Chapter 5 Causes of Action) that otherwise belong to a Debtor, including all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, other than those expressly released or compromised as part of or pursuant to the Plan or by other order of the Bankruptcy Court entered prior to the Effective Date.  The Causes of Action retained hereby include, without limitation, all Claims and Causes of Action listed on Appendix __ to the Disclosure Statement.

(b)      The Liquidating Trustees (as representative of the Estates) shall retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by a Debtor against or with respect to all Claims asserted against the Debtors or property of the Estates. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of a Debtor's failure to identify such property in the Debtor's Schedules or the Disclosure Statement accompanying the Plan unless otherwise ordered by the Bankruptcy Court. The Liquidating Trustees may compromise and settle a claim against a party defendant without notice and a hearing thereon whenever the amount to be received, or the amount of the Allowed Claim or the difference between the Filed Claim and the Allowed Claim, will be $50,000 or less as a result of such compromise and settlement.

(c)      In this connection, the Liquidating Trustees shall continue to review payments made by and transactions involving the Debtors prior to the Petition Date to determine whether Chapter 5 Causes of Action to avoid such payments and transactions should be brought. Failure to specifically identify potential actions in the Plan of Disclosure Statement shall not be deemed a waiver of any such action by the Debtors or any other party.

## ARTICLE VIII
## THE LIQUIDATING TRUSTS AND THE LIQUIDATING TRUSTEES

### 8.1    The Liquidating Trusts.

The Liquidating Trusts are created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions to certain holders of Allowed Claims, and the Liquidating Trust is not otherwise authorized to engage in any trade or business.  The Beneficiaries of the Liquidating Trusts will be treated as the grantors and deemed owners.  Each Liquidating Trustee appointed under this Plan shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code of 1986, as amended, and the Federal Income Tax Regulations promulgated thereunder.

### 8.2    Funding of Res of the Trusts.

To fund the Liquidating Trusts, the Liquidating Trustees shall take possession of, and have title to, all the Liquidating Trust Assets as of the Effective Date.  The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective upon the Effective Date, without the need of further documentation or instruments of conveyance.   Upon the Effective Date, the Liquidating Trusts also shall be deemed to have taken assignments of bank accounts containing Cash in the possession of the Debtors and the Estates, and an assignment, bill of sale, deed and/or release covering all other Liquidating Trust Assets.  The Liquidating Trustees may present such Orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trusts.  Such Orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustees, the Trust Oversight Committees, and the holders of Allowed and Disputed Claims) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trusts, in accordance with the terms of this Plan.

### 8.3    The Liquidating Trustees.

The Liquidating Trustees shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustees shall be the exclusive trustees of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  The Liquidating Trustees shall be designated by the Trust Oversight Committees not less than five (5) business days before the Confirmation Hearing.  Subject to the Bankruptcy Court's approval at the Confirmation Hearing, the Persons to be designated by the Trust Oversight Committees to serve as the Liquidating Trustees shall serve as Liquidating Trustees. Matters relating to the appointment, removal and resignation of a Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, provided that the Liquidating Trust Agreement shall authorize the Trust Oversight

21

Committees, in their sole discretion, to remove any of the Liquidating Trustees, at any time. The Liquidating Trustees shall be required to perform their duties as set forth in this Plan and the Liquidating Trust Agreement.

**8.4     Retention of Professionals.**

The Liquidating Trustees shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustees, are necessary to assist the Liquidating Trustees in the performance of their duties in connection with each individual Liquidating Trust. The reasonable fees and expenses of such professionals shall be paid by the appropriate Liquidating Trust upon the monthly submission of statements to the Liquidating Trustees. The payment of the reasonable fees and expenses of the Liquidating Trustees' retained professionals shall be made in the ordinary course of business from the property of the Liquidating Trust, for which such services were provided and shall not be subject to the approval of the Bankruptcy Court. The Liquidating Trustees shall have the discretion to allocate the reasonable fees and expenses of the retained Professional among the Liquidating Trusts. The Liquidating Trustees shall employ their business judgment when making such allocation. Professionals of, among others, the Debtors and the Bond Trustee, shall be eligible for retention by the Liquidating Trustees.

**8.5     Compensation of the Liquidating Trustees.**

The compensation of the Liquidating Trustees, on a post-Effective Date basis, shall be determined by the Trust Oversight Committees. The payment of the fees of the Liquidating Trustees and any professionals retained by the Liquidating Trustees shall be made in accordance with the Liquidating Trust Agreement.

**8.6     Liquidating Trust Expenses.**

Subject to the provisions of each Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustees in administering this Plan, each Liquidating Trust or in any manner connected, incidental or related thereto, in effecting distributions from each Liquidating Trust (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets of the affected Liquidating Trust remaining from time to time. Such expenses shall be paid as they are incurred, and in the ordinary course, without the need for Bankruptcy Court approval.

**8.7     Liability; Indemnification.**

The Liquidating Trustees shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustees, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustees may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustees shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustees

unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trusts shall indemnify and hold harmless the Liquidating Trustees and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trusts or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 8.8    Termination.

The duties, responsibilities and powers of the Liquidating Trustees shall terminate after all Liquidating Trust Assets, including Causes of Action transferred and assigned to the appropriate Liquidating Trust or involving the Liquidating Trustees on behalf of the appropriate Liquidating Trust, are fully resolved, abandoned or liquidated and the Available Cash has been distributed in accordance with this Plan and the Liquidating Trust Agreement. Except in the circumstances set forth below, each Liquidating Trust shall terminate no later than three years after the Effective Date. However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of one of the Liquidating Trusts, the term of such Liquidating Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Liquidating Trustees receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the affected Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of such Liquidating Trust. Upon the occurrence of the termination of any one or more of the Liquidating Trusts, the Liquidating Trustee, with respect to such terminated Liquidating Trust, shall File with the Bankruptcy Court a report thereof and seek an order discharging such Liquidating Trustee.

### 8.9    Authority of the Liquidating Trustees.

On and after the Effective Date, the Liquidating Trustees shall be authorized to take all actions necessary to execute and deliver all Plan Documents issued or entered into pursuant to the Plan and each of the Liquidating Trust Agreement.

### 8.10    Approval of Agreements.

Entry of the Confirmation Order shall constitute approval of the Plan Documents, including, without limitation, the Liquidating Trust Agreement, and such transactions and authorization for the Liquidating Trustees, as appropriate, to execute and deliver each of the Plan Documents, including, without limitation, the Liquidating Trust Agreement.

## ARTICLE IX
## TRUST OVERSIGHT COMMITTEES

### 9.1     Creation of Trust Oversight Committees.

On the Effective Date, the Creditors holding Allowed Claims in Classes 4.1A, 4.1B, 4.1C, 4.1D, 4.1E, 4.2A, 4.2B, 4.2C, 4.2D and 4.2E  shall appoint at least three, but no  more than five Persons as members of a Trust Oversight Committees to oversee the Liquidating Trusts, subject to the Bankruptcy Court's approval, before the conclusion of the Confirmation Hearing; provided, however, that with respect to the Viking Drilling Liquidating Trust, it may be necessary to establish a separate Trust Oversight Committee comprised of different members to comply with Norwegian laws regarding residency and gender.

In the event that any member of a Trust Oversight Committee (a) sells, transfers or assigns all of its Liquidating Trust Interests or (b) receives full satisfaction of its Allowed Claim, such member immediately shall be removed from the relevant Trust Oversight Committee.  In such an event, the remaining members of the relevant Trust Oversight Committee shall appoint a replacement member.

### 9.2     Procedures.

The Trust Oversight Committees shall adopt bylaws that shall govern the Trust Oversight Committees.

### 9.3     Duties and Responsibilities.

The duties and responsibilities of the Trust Oversight Committees are set forth in the Liquidating Trust Agreement.

### 9.4     Duration.

The Trust Oversight Committees shall remain in existence for a reasonable time, following the time of the final Cash distribution to holders of Allowed Claims under this Plan by the Liquidating Trusts.

### 9.5     Compensation and Expenses.

The members of the Trust Oversight Committees shall serve without compensation for their performance of services, except that they shall be entitled to reimbursement of reasonable expenses from the appropriate Liquidating Trust without further order of the Bankruptcy Court.

### 9.6     Liability; Indemnification.

Neither the Trust Oversight Committees, nor any of its members, or designees, nor any duly designated agent or representative of the Trust Oversight Committees, or its respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of the Trust Oversight Committees, nor shall any member of the Trust Oversight Committees be liable for any act or omission taken or omitted to be taken in its capacity as a

member of the Trust Oversight Committees, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud. The Trust Oversight Committees may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Trust Oversight Committees shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Trust Oversight Committees, or any of its members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud. Each Liquidating Trust shall indemnify and hold harmless the Trust Oversight Committees and its members, designees, and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to such Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## ARTICLE X
## DISPUTED CLAIMS, DISPUTED INTERESTS, AND MISCELLANEOUS DISTRIBUTION PROVISIONS

### 10.1    Objections.

An objection to the allowance of a Claim shall be in writing and may be Filed only by the Liquidating Trustees, at any time on or before the Claims Objection Deadline. The Liquidating Trustees, on behalf of the Liquidating Trusts, shall prosecute any such objection until determined by a Final Order, unless the relevant Liquidating Trustee, (a) compromises and settles such objection — by written stipulation subject to Bankruptcy Court approval, if necessary, or (b) withdraws such objection.

### 10.2    Amendments to Claims; Claims Filed After the Confirmation Date.

Except as otherwise provided in the Plan, after the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court, and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the Face Amount thereof. Except as otherwise provided in the Plan, any new or amended Claim Filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Trustees.

### 10.3    Distributions.

The Liquidating Trustees shall make distributions from each individual Liquidating Trust to the beneficiaries of such Liquidating Trust from time to time as set forth in the Liquidating Trust Agreement.

HOUSTON 1050033v.4

10.4    **Distributions on Account of Disputed Claims.**

The Liquidating Trust Agreement will provide that no distributions will be made on a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

10.5    **Disputed Claim Reserves.**

(a)    *Reserve for Disputed Claims.*  The Liquidating Trust Agreement shall require a reserve for the account of each holder of a Disputed Claim in a Disputed Claim Reserve Account for the affected Class (i) property that would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on such date or (ii) such other property as may be agreed upon between the holder and the Liquidating Trustees.  To the extent a Disputed Claim becomes an Allowed Claim, property of a Liquidating Trust reserved for the holder thereof shall be distributed by the Liquidating Trustees to such holder as soon as practicable after such Claim becomes an Allowed Claim pursuant to, and to the extent provided for in, the Liquidating Trust Agreement.  To the extent an objection to a Disputed Claim is upheld or a Claim is withdrawn or reduced, the reserves held on account of such Disputed or withdrawn Claim shall be reallocated pro rata among Allowed Claims and Disputed Claims, and the portion allocable to Allowed Claims shall be paid to the holders thereof on the next distribution Date until all Allowed Claims have been paid in full.

(b)    *Reserved Amounts and Estimations.*  For purposes of creating reserves providing for the distributions of Cash to holders of Allowed Claims, upon a request for estimation by the Liquidating Trustees, the Bankruptcy Court may determine the amount of Cash sufficient to reserve on account of any Disputed Claim, pursuant to § 502 or other applicable law, in which event the amount so determined will be reserved on account of such Disputed Claim, or, in lieu thereof, the Bankruptcy Court will determine the maximum amount for such Disputed Claim, and that amount will be the maximum amount in which such Claim may ultimately be Allowed, if such Claim becomes Allowed in whole or in part.  If no such estimation is requested with respect to a liquidated Disputed Claim, the Liquidating Trustees will reserve Cash in the Disputed Claim Reserve Account based on the Face Amount of such Claim until the Claim is Allowed by an order of the Bankruptcy Court, at which time the reserve amount pending a Final Order may be the amount so Allowed.

10.6    **Undeliverable or Unclaimed Distributions.**

(a)    Any Entity entitled to receive a Cash distribution but that fails to present a check within 120 days of its issuance shall be entitled to receive a reissued check from the Liquidating Trustees for the amount of the original check, without any interest, if such Entity requests the Liquidating Trustees to reissue such check and provides such documentation as may be requested to verify that such Entity is entitled to such check prior to the later of (a) the first anniversary of the Effective Date and (b) six (6) months after such Entity's Claim becomes an Allowed Claim.  If an Entity fails to present a check within 120 days of its issuance and fails to request reissuance of such check prior to the later to occur of (a) the first anniversary of the Effective Date, (b) six (6) months following the date such Entity's Claim becomes an Allowed Claim, or (c) for any distribution issued more than two years after the Effective Date, 180 days following the date of issuance, such Entity shall not be entitled to receive any distribution with

26

respect to the amount of such check. If the distribution to any holder of an Allowed Claim is returned to the Liquidating Trustees as undeliverable, no further distributions will be made to such holder unless and until the Liquidating Trustees are notified in writing of such holder's current address; *provided, however*, that the Liquidating Trustees shall make reasonable business efforts to contact the holder of such Allowed Claim, identify the correct mailing address and resend the distribution.

(b)     All Claims for undeliverable distributions must be made on or before the later to occur of (i) the first anniversary of the Effective Date and (ii) six (6) months following the date such Entity's Claim becomes an Allowed Claim. After such date, all unclaimed property shall revert to the Liquidating Trust, and the Claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

### 10.7    Allocation of Consideration.

The aggregate consideration to be distributed to a holder of an Allowed Claim shall be treated as first satisfying an amount equal to the stated principal amount of such Allowed Claim and any remaining consideration as satisfying Allowed accrued but unpaid interest, if any, thereon.

### 10.8    Transmittal of Distributions and Notices.

(a)     Any property or notice other than Cash distributions made through this Article X that an Entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address stated on any notice of appearance Filed by that Entity or its authorized agent prior to the Effective Date. If no notice of appearance has been Filed, notice shall be sent to the address indicated on a properly Filed proof of Claim or, absent such a proof of Claim, the address that is listed on the Schedules for that Entity. The date of distribution shall be the date of mailing, and property distributed in accordance with this Section 10.8 shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

(b)     A holder of a Claim or Interest may designate a different address for notices and distributions by notifying the Liquidating Trustees of that address in writing. The new address shall be effective upon receipt by the Liquidating Trustees, as the case may be.

### 10.9    Method of Cash Distributions.

Any Cash payment to be made pursuant to the Liquidating Trust Agreement may be made, at the option of the Liquidating Trustees, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

### 10.10    Distributions on Non-Business Days.

Any distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

27

**10.11    Withholding Taxes.**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Entities holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

**10.12    Set-offs.**

Except as otherwise provided in the Plan, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Liquidating Trustees may, but shall not be required to, setoff against any Claim and the distributions to be made with respect to the Claim, before any distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that a Debtor may hold against the holder of such Claim; *provided, however,* that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of a Debtor or the Liquidating Trustees, nor any provision of the Plan, shall constitute a waiver or release by a Debtor or the Liquidating Trustees of any such claims, rights and Causes of Action that a Debtor or the Liquidating Trustees may possess against such holder. To the extent a Debtor or the Liquidating Trustees, fail to setoff against a holder of a Claim or Interest and seek to collect a claim from the holder of such Claim or Interest after a distribution to the holder of such Claim or Interest pursuant to the Plan or the relevant Liquidating Trust Agreement, the relevant Liquidating Trustees shall be entitled to full recovery on its claim, if any, against the holder of such Claim or Interest.

**ARTICLE XI**
**EXECUTORY CONTRACTS AND LEASES**

**11.1    Rejection of Executory Contracts.**

(a)    On the Effective Date, all executory contracts and unexpired leases to which a Debtor is a party shall be automatically rejected by the Debtors without further notice or order.

(b)    The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to § 365, effective as of the Petition Date.  Any party to an executory contract or unexpired lease identified for rejection as provided herein may, within the same deadline and in the same manner established for Filing objections to Confirmation, file any objection thereto.  Failure to file any such objection within the time period set forth above shall constitute consent and agreement to the rejection.

**11.2    Bar Date for Rejection Damages.**

If the rejection of an executory contract or unexpired lease pursuant to Section 11.1 above gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is a General Unsecured Claim, shall be classified in the appropriate Debtors case in Class 5A, 5B, 5C, 5D or 5E as may be appropriate; *provided, however,* that in either event any Claim arising from the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors, their

28

Estates, affiliates, successors, properties, or the affected Liquidating Trust unless a proof of Claim is Filed and served on the Liquidating Trustees within thirty (30) days after the Effective Date.

### ARTICLE XII
### RELEASES; INDEMNIFICATION; PLAN INJUNCTION

**12.1    Releases; Indemnification.**

(a)    Except as otherwise specifically provided by the Plan, the distributions and rights that are provided in the Plan and the Liquidating Trust Agreements shall be in complete satisfaction and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date) of (i) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interests in the Debtors and the assets and properties of the Debtors, whether known or unknown, and (ii) all Causes of Action (whether known or unknown, either directly or derivatively through the Debtors) against, Claims (as defined in § 101 of the Bankruptcy Code) against, liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or indirect assets and properties of, and obligations of successors and assigns of, the Debtors and their successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan.

(b)    On the Effective Date, the Debtors and the Estates shall be deemed to release, indemnify and hold harmless each present and former officer and director (including W. Dennis Heagney, Youllonda Driver, Niels Erik Feilberg, Ole Geir Hagen and Erik Wahlstrom), consultant, financial adviser, attorney, accountant and other representative of the Debtors (the "Indemnified Persons"), from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon or related to any act or omission, transaction, event or other occurrence taking place on or at any time from the Petition Date through and including the Effective Date in any way relating to the Debtors, the Cases or the Plan, except that no Indemnified Person shall be released from acts or omissions which are the result of willful misconduct or gross negligence.

(c)    The foregoing provisions are an integral part of the Plan and are essential to its implementation. If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases and indemnities, the Debtors reserve the right to amend the Plan so as to give effect as much as possible to them or to delete them.

**12.2    Injunction.**

(a)    Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that all Entities who have held, hold or may hold Claims against or

Interests in a Debtor, with respect to any such Claims or Interests, are permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Trusts, the Trust Oversight Committees and the Liquidating Trustees, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, of any judgment, award, decree or order against the Debtors, the Liquidating Trusts, the Trust Oversight Committees and the Liquidating Trustees, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors, the Liquidating Trusts, the Trust Oversight Committees and the Liquidating Trustees or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Trusts, the Trust Oversight Committees and the Liquidating Trustees, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors, the Liquidating Trusts, the Trust Oversight Committees and the Liquidating Trustees, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any Debtors; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(b)     Furthermore, except as otherwise expressly provided in the Plan, for the consideration described in the Plan, as of the Effective Date, all Entities who have held, hold or may hold claims released pursuant to Section 12.1 above, whether known or unknown, and their respective agents, attorneys and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date, with respect to any claim released pursuant to Section 12.1 hereof, from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any claim against any Indemnified Person or the property of any of them; (ii) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any Indemnified Person or the property of any Indemnified Person; (iii) creating, perfecting or enforcing any encumbrance of any kind against any Indemnified Person; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to any Indemnified Person; and (v) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event that any Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Section or Section 12.1 of the Plan, then, upon notice to the Bankruptcy Court, the action or proceeding in which the claim of such Entity is asserted shall automatically be transferred to the Bankruptcy Court for enforcement of the provisions of this Section and Section 12.1 of the Plan.

**12.3    Revocation.**

Notwithstanding the forgoing the Liquidating Trustees may, on ordinary motion, seek an order of the Bankruptcy Court vacating one or more of such releases granted in the plan to an

Indemnified Person in the event an Indemnified Person should breach the terms of an Employment Agreement.

## ARTICLE XIII
## MISCELLANEOUS

### 13.1    Conflicts between Plan and Confirmation Order.

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

### 13.2    Term of Injunction or Stays.

Unless otherwise provided, any injunction or stay imposed by operation of §§ 105 or 362 shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in this Section, however, shall be construed as a limitation of the permanent injunctions provided for in Article XII of the Plan.

### 13.3    Retention of Jurisdiction.

Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    to determine (i) any Disputed Claims, Disputed Interests and all related Claims accruing after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (ii) the validity, extent, priority and non-avoidability of consensual and nonconsensual Liens and other encumbrances, (iii) pre-confirmation tax liability pursuant to § 505, and (iv) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

(b)    to allow, disallow, estimate, liquidate or determine any Claim or Interest against a Debtor and to enter or enforce any order requiring the Filing of any such Claim or Interest before a particular date;

(c)    to approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of a Debtor pursuant to § 365 and Article IX hereof;

(d)    to determine any request for payment of an Administrative Expense entitled to priority under § 507(a)(1), including compensation of parties entitled thereto;

(e)    to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Liquidating Trust Agreement, any disputes relating to whether or not a timely and proper proof of Claim was Filed or whether a Disallowed Claim or Disallowed Interest should be reinstated;

(f)    to implement the provisions of the Plan and the Liquidating Trust Agreement and entry of orders in aid of confirmation and consummation of the Plan, including

31

any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

(g)     to determine issues relating to the garnishment of any distributions payable under the terms of the Plan;

(h)     to modify the Plan pursuant to § 1127;

(i)     to adjudicate any and all Causes of Action that arose in the Case prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date, including without limitation, any remands of appeals;

(j)     to resolve disputes concerning any reserves with respect to Disputed Claims, Disputed Interests or the administration thereof;

(k)     to resolve any disputes concerning whether a person or entity had sufficient notice of the Case, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(l)     to determine any and all applications, Claims, Interests, pending adversary proceedings and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Interests) in these Cases;

(m)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(n)     to seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142;

(o)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(p)     to recover all assets of a Debtor and property of any Estate, wherever located, including any Cause of Action under §§ 544 through 551;

(q)     to resolve any dispute relating to the approval and payment of the fees and expenses of the Liquidating Trustees, or their respective professionals;

(r)     to resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

(s)     to hear any other matter not inconsistent with the Bankruptcy Code;

(t)     to resolve any and all disputes or controversies relating to distributions to be made, and/or reserves  or escrows to be established, under the Plan;

32

(u)      to enter one or more final decrees closing the Case;

(v)      to enforce the injunction granted under Section 12.2 of the Plan;

(w)      to issue any orders required in aid of enforcing this Order in the Country of Norway, or as requested by a Norwegian judicial, quasi-judicial or administrative tribunal, court or the like; and

(x)      to approve settlements relating to all of the above.

### 13.4    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 13.5    CramDown

The Plan Proponents shall request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b), notwithstanding the requirements of § 1129(a)(8), on the basis that the Plan is fair and equitable as to that Creditors and does not discriminate unfairly with respect to any non-consenting Impaired Class of Claims.   The Plan Proponents reserve the right to alter the treatment of any Class in order to effectuate a cram down under § 1129(b).

### 13.6    Modification of the Plan.

The Plan Proponents reserve the right, in accordance with the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation Date, upon agreement of the Plan Proponents, which agreement shall not be withheld other than in the exercise of a Plan Proponents reasonable business judgment. After the Confirmation Date, but before the Effective Date, the Plan Proponents may, upon order of the Court, amend or modify this Plan in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan. After the Effective Date, the Liquidating Trustees may, upon order of the Court, amend or modify this Plan in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan.

### 13.7    Withdrawal or Revocation of the Plan.

The Plan Proponents reserve the right to revoke or withdraw the Plan, prior to the Confirmation Date.  In the event one or more of the Debtors abandon confirmation or withdraw the Plan, then NT may continue to prosecute the Plan as sole Plan Proponent of the Plan.  If the Confirmation Date does not occur, the Plan shall be of no further force or effect.

### 13.8    Notices.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following:

Counsel for the Debtors:        John P. Melko
                                         GARDERE WYNNE SEWELL LLP
                                         1000 Louisiana
                                         Suite 3400
                                         Houston, Texas 77002
                                         Telephone: (713) 276-5727
                                         Facsimile: (713) 276-6727

Counsel for NT:        Rhett G. Campbell
                                         THOMPSON & KNIGHT LLP
                                         333 Clay Street, Ste. 3300
                                         Houston, TX  77002-4499
                                         Telephone:  (713) 654.8111
                                         Facsimile:  (713) 654.1871

                                         and

                                         Ira L. Herman
                                         THOMPSON & KNIGHT LLP
                                         919 Third Avenue, 39th Floor
                                         New York, NY  10022
                                         Telephone:  (212) 751.3001
                                         Facsimile:  (212) 751.3113

### 13.9    Implementation of Plan.

The parties shall use reasonable efforts and shall cooperate with one another to effect the transactions contemplated by the Plan.  Each of the parties hereto shall execute such documents and other papers and take such further actions as may be reasonably required or desirable to carry out the provisions hereof and the transactions contemplated hereby.

### 13.10    Governing Law.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without reference to its conflict of laws rules.

### 13.11    Severability.

Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the

enforceability or operative effect of any other provision of the Plan.  If any term or provision of the Plan is of such a character as to deny Confirmation, the Plan Proponents reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.12    All Claims.

This Plan is intended to address and provide for the satisfaction of all Claims against the Debtors of whatever character whether or not disputed, contingent, or liquidated and whether or not allowed by the Bankruptcy Court under § 502.  However, only those Claims Allowed under § 502 shall be entitled to receive the treatment afforded by the Plan.

### 13.13    Exculpation

Neither the Plan Proponents nor their present or former officers, directors, employees, agents, advisers, affiliates, underwriters or investment bankers, nor any other professional persons employed by any of them (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document.  The Exculpated Persons shall have no liability to the Debtors, any Creditor, Interest holder, any other party-in-interest in the Cases or any other Entity for actions taken or not taken under the Plan or the Liquidating Trust Agreement, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 13.14    Binding Effect.

This Plan shall be binding upon and inure to the benefit of the Debtors, the Liquidating Trusts, the Liquidating Trustees, all present and future holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in these Cases.

HOUSTON 1050033v.4

**DATED:** September 29, 2009
Respectfully submitted,

| Norsk Tillitsmann ASA | Viking Drilling ASA |
|---|---|
| By:_____ | By: _____ |
| Name:_____ | Name: _____ |
| Title:_____ | Title:_____ |
| Viking Offshore (USA), Inc. | Viking Producer Inc. |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title:_____ | Title:_____ |
| Viking Prospector Inc., | Viking Century Inc. |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title:_____ | Title:_____ |

HOUSTON 1050168v.1

**DATED**:  September 29, 2009
Respectfully submitted,

| | |
|---|---|
| Norsk Tillitsmann ASA<br><br>By: _(signature)_____<br>Name: _OLA BLEGÅRD_____<br>Title:_____ | Viking Drilling ASA<br><br>By:_____<br>Name:_____<br>Title:_____ |
| Viking Offshore (USA), Inc.<br><br><br>By:_____<br>Name:_____<br>Title:_____ | Viking Producer Inc.<br><br><br>By:_____<br>Name:_____<br>Title:_____ |
| Viking Prospector Inc.,<br><br>By:_____<br>Name:_____<br>Title:_____ | Viking Century Inc.<br>By:_____<br>Name:_____<br>Title:_____ |

HOUSTON I050168v.1

## CERTIFICATE OF SERVICE

This is to certify that on September 29, 2009, a true and correct copy of the foregoing document was forwarded by electronic submission to all parties receiving notices via the ECF system and by regular U.S. mail to all parties on the attached Master Service List.

_____ /s/    John P. Melko_____
John P. Melko

HOUSTON 1050033v.4