IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
|  | ) |
| VIKING OFFSHORE, | ) CASE NO. 08-31219-H3-11 |
| (USA), INC., ET AL., | ) |
|  | ) |
| Debtors, | ) JOINTLY ADMINISTERED |
|  | ) |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "Motion to Compromise Controversy Between Viking and Gulf Copper & Manufacturing Corporation" (Docket No. 731). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA ("Viking") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 29, 2008. The cases were jointly administered, by order entered March 4, 2008, and were designated as a complex Chapter 11 case, by order entered March 10, 2008.

Prepetition, Viking's semisubmersible drilling rig, the Viking Producer,[1] was placed in the shipyard of Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper") for refurbishing.  Gulf Copper arrested the Viking Producer prepetition, seeking to enforce an asserted maritime lien.  By agreed order entered March 11, 2008, Gulf Copper released its arrest of the Viking Producer, and the Viking Producer remained at the Gulf Copper shipyard subject to agreed fees for, inter alia, dockage and wharfage.  (Docket No. 38).

Gulf Copper filed a proof of claim against Viking Offshore, (USA) Inc. in the total amount of $8,473,521.52, asserting a maritime lien in the amount of $7,473,521.52 for necessaries provided to the Viking Producer, and an additional $1 million for breach of contract, allegedly secured by the Viking Producer.

Viking asserts that although it has not filed an objection to Gulf Copper's proof of claim, it disputes the amount of the claim, any alleged breach of contract, Gulf Copper's assertion of a maritime lien, and assertion of the maritime lien in the Viking Offshore (USA) Inc. case rather than the Viking Producer, Inc. case.

On May 2, 2008, Xtreme Industries, LLC ("Xtreme"), a subcontractor under Viking's contract with Gulf Copper, filed

---

[1] The Viking Producer apparently is owned by Viking Producer, Inc., a Debtor subsidiary of Debtor Viking Offshore (USA), Inc.

suit against Gulf Copper, for breach of contract.  Xtreme has also filed a proof of claim asserting a statutory maritime lien on the Viking Producer.[2]  On August 18, 2008, Viking filed suit against Xtreme.  Viking objects to Xtreme's claim on grounds the work performed by Xtreme was unsatisfactory, and seeks an affirmative recovery for what it asserts was damage caused by Xtreme.  The suits filed by Xtreme and Viking have been consolidated into Adversary No. 08-3296.

In the instant motion, Viking seeks approval of a compromise with Gulf Copper.  The proposed compromise, addressing all matters in controversy between Viking and Gulf Copper, calls for reduction of Gulf Copper's claim from $8,473,521.52 to $5,750,000, and allowance of a maritime lien against the Viking Producer in that amount.  The "Compromise Settlement Agreement" attached to the instant motion is to be implemented through Gulf Copper's filing of an amended proof of claim in the Viking Producer, Inc. case, and withdrawal of its proof of claim in the Viking Offshore (USA), Inc. case.  (Docket No. 731, Exhibit A).

The proposed compromise also determines generally that Viking does not own scaffolding presently providing access to the Viking Producer at Gulf Copper's yard, but would allow Viking

---

[2]This court has held, on Viking's motion for summary judgment, that Xtreme waived its right to assert a lien against the Viking Producer.  (Docket No. 66, Adv. No. 08-3296).  This court's order was entered after the automatic stay was lifted in Xtreme's own Chapter 11 case, pending in the United States Bankruptcy Court for the Western District of Louisiana.

access free of charge until either the scaffolding is removed or the Viking Producer is sold.

The "Compromise Settlement Agreement" provides in pertinent part:

> 3. <u>Composition of the Reduction in Gulf Copper's Proof of Claim</u>. The reduction of Gulf Copper Proof of Claim from $8,473,521.52 to $5,750,000 is allocated as follows: (a) a reduction of $1,000,000 for claims of equitable subordination and fraudulent transfers under 11 U.S.C. § 548; (b) a reduction of $1,549,179.75 for the Xtreme Claims; (c) a reduction of $159,316.28 for the Nacher Claims; and (d) a reduction of $15,025.49 for the Welding Claims.
>
> * * *
>
> 5. Agreement to Cooperate in Joint Litigation against Xtreme Industries, LLC. The Viking Parties agree to give Gulf Copper any and all data, information, reasonable cooperation and reasonable assistance to allow Gulf Copper to pursue claims against Xtreme Industries, LLC related to its work on the VIKING PRODUCER, including but not limited to access to the Viking Parties' retained experts, Corrpro Companies, and representatives of the Viking Parties. This Agreement does not otherwise affect the assertion of claims by Viking Parties and Gulf Copper against Xtreme Industries, LLC in either the Viking Bankruptcy Court or the bankruptcy case filed by Xtreme Industries, LLC pending in United States Bankruptcy Court for the Western District of Louisiana, Case No. 09-50832. The Parties shall continue to each bear their own costs and fees in pursuit of their respective claims against Xtreme Industries, LLC or the defense of any claims by Xtreme Industries, LLC asserted against the respective Parties. To the extent that either Party obtains a judgment against Xtreme Industries, LLC or suffers a judgment in favor of Xtreme Industries, LLC, the risk or reward of such judgment is to be borne solely by Party to the judgment and not shared with any Party to this Agreement.

(Docket No. 731, Exhibit A).

Xtreme objects to the instant motion, to the extent the Compromise Settlement Agreement is binding on Xtreme, establishes that Xtreme's work is defective, or establishes the value of alleged defective work by Xtreme. Xtreme also objects on grounds the agreement impermissibly binds Viking and Gulf Copper "to support one another in any action by or against Xtreme."

Youllonda Driver, the chief financial officer of both Viking Offshore (USA) Inc. and Viking Producer, Inc., testified that, in negotiating the settlement, Viking investigated potential counterclaims against Gulf Copper, regarding the welding and paint done on the Viking Producer. She testified that Viking attempted to reconcile amounts sought by Gulf Copper with invoices Gulf Copper had submitted to Viking.

Driver testified that the negotiation of the settlement was at arms' length. She testified that there were several formal meetings between Viking and Gulf Copper, with counsel present, as well as some meetings between Viking and Gulf Copper business personnel, without counsel. She testified that the parties conducted a mediation regarding the Xtreme matter. She testified that the settlement is in the best interest of the bankruptcy estates in that it eliminates the expense of litigating Viking's counterclaims against Gulf Copper. She testified that the expenses of litigation would include extensive expert testimony as to the proper standard for paint. She

testified that in determining the amount of the settlement, the parties considered the sunk costs of Gulf Copper in providing services to the Viking Producer.

## Conclusions of Law

In deciding whether to approve a settlement of anticipated litigation, the court should consider the terms of the compromise in comparison with the likely rewards of litigation.  The court must evaluate:  1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; 2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and 3) all other factors bearing on the wisdom of the compromise.  Matter of Cajun Elec. Power Cooperative, Inc., 119 F.3d 349 (5th Cir. 1997), citing In re Jackson Brewing Co., 624 F.2d 599 (5th Cir. 1980).

Under the third "catch-all" provision, the court should consider the best interests of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.  In re Foster Mortgage Corp., 68 F.3d 914 (5th Cir. 1995).

In the instant case, the proposed compromise was negotiated between Viking and Gulf Copper at arms length.  The

settlement falls within a reasonable range of outcomes of the pending and contemplated litigation between Viking and Gulf Copper.  The court notes substantial uncertainty in fact on the question of the value of the work performed by Gulf Copper and its subcontractors.  The instant Chapter 11 case has already been pending for 21 months, without the confirmation of a plan.  Resolution of anticipated litigation serves the salutary goal of creating the conditions in which a plan can be proposed which is not so unreasonably vague as to render it not feasible.  The litigation on the questions of the value of Gulf Copper's claim and whether it is secured by the Viking Producer certainly would require the expenditure of many hours of attorney time, and payments to expert witnesses.

With respect to the objections raised by Xtreme, neither has merit factually.  The "Compromise Settlement Agreement" does not establish that Xtreme's work was defective, and does not determine a value of the work.  The "Compromise Settlement Agreement" does not require that Gulf Copper and Viking support each other's contentions, but rather only requires that they give "reasonable cooperation and reasonable assistance."[3]  The court concludes that Viking should be

---

[3] The court notes that the "Compromise Settlement Agreement" is not a "Mary Carter Agreement."  Under Texas law, a Mary Carter Agreement, defined as "a settlement where the settling defendant remains a party at trial and retains a financial stake in the plaintiff's recovery," is void as against public policy.  Elbaor v. Smith, 845 S.W.2d 240 (Tex. 1992).

7

authorized to consummate the instant settlement.

Based on the foregoing, a separate Judgment will be entered granting the "Motion to Compromise Controversy Between Viking and Gulf Copper & Manufacturing Corporation" (Docket No. 731).

Signed at Houston, Texas on December 11, 2009.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE