IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|   |   |   |
|---|---|---|
| IN RE | ) ) | |
| VIKING OFFSHORE (USA), INC., | ) ) | CASE NO. 08-31219-H3-11 |
| Debtors, | ) ) ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "Joint Motion for Authority to Make Non-Material Modifications to Modified Joint Non-Consolidating Chapter 11 Plan of Liquidation" (Docket No. 891). The following are the Findings of Fact and Conclusions of Law of the court. A separate judgment will be entered denying the motion without prejudice. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA ("Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 29, 2008. The cases were jointly administered, by order entered March 4, 2008, and were designated as a complex Chapter 11 case, by order entered March 10, 2008.

On November 2, 2009, Debtors filed the "Modified Joint Non-Consolidating Chapter 11 Plan of Liquidation" (the "Plan"). The Plan provided generally, with respect to the secured claims of maritime lien holders in Classes 3B, 3C, and 3D, that, unless they agreed in writing on treatment more favorable to the Debtors, they would be paid on the latest of the effective date, fifteen days after the claim was allowed, or the date that the liquidating trust has distributable cash. The Plan provided generally, with respect to the secured claims of bondholders in Classes 4.1A, 4.1B, 4.1C, 4.1D, 4.1E, 4.2A, 4.2B, 4.2C, 4.2D, and 4.2E, that they would be paid after distributions were made on, *inter alia*, the maritime lien claims in Classes 3B, 3C, and 3D. (Docket No. 721).

Section 5.3(a) of the plan provides in pertinent part: "Classes--3B, 3C and 3D shall consist of Allowed Maritime Lien Secured Claims."

> The plan defines "Allowed" in Section 2.1:
>
> "Allowed" shall mean, with respect to Claims and Interests, (a) any Claim against or Interest in a Debtor, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely Filed proof of Claim has been Filed, (c) any Interest registered in a Debtor's books and records as of the Petition Date or (d) any Claim allowed pursuant to the Plan and, in each such case in (a), (b) and (c) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the

>Bankruptcy Rules or the Bankruptcy Court or (ii) such an objection is so Filed and the Claim or Interest shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

The plan was confirmed, by order entered December 14, 2009.  (Docket No. 836).

On January 14, 2010, Debtors moved for authority to sell two cranes for $2,863,000, free and clear of liens, with the liens of bondholders to attach to the sale proceeds.  (Docket No. 852).  Three entities asserting maritime liens, Gulf Copper & Manufacturing, Inc., Dooley Tackaberry, Inc. and Zentech, Inc. (the "Objecting Maritime Lien Holders") objected to the sale, asserting that their maritime liens attached to the cranes, and thus should attach to the sale proceeds.  (Docket No. 863).

After the hearing on the motion to sell, the court approved the sale, by order entered January 20, 2010.  The order required that the proceeds of sale be deposited into escrow, and provided that the secured interests of the bondholders and the maritime lienholders attach to the sale proceeds "with the same force and effect as if attached to the Cranes."  (Docket No. 868).

On February 26, 2010, the proponents of the Plan, Debtors and Norsk Tillitsmann ASA ("NT," the bond trustee), filed the instant motion seeking approval of a post-confirmation modification of the Plan.  Debtors and NT assert that, subsequent to the confirmation of the Plan, but prior to its effective date,

3

a dispute arose between the Objecting Maritime Lien Holders and the bondholders as to the attachment of maritime liens to equipment (and the sale proceeds thereof) not installed on the Viking Producer rig.  Debtors propose a modification under which the proceeds of sale of such equipment will be distributed 40 percent to the maritime lien holders, and 60 percent to the bondholders.  The proposed modification also changes compensation and indemnity provisions of the liquidating trusts under the plan.  The instant motion is signed by counsel for Debtors and counsel for NT.  (Docket No. 891).

IEC Systems, LLC ("IEC") filed an objection to the instant motion.  In its objection, IEC asserts that it is a maritime lien holder, and asserts that it has not agreed to the modification.  (Docket No. 907).  Viking Producer, Inc. scheduled IEC's claim as a secured claim, in the amount of $432,477.08.  (Docket No. 578).

The hearing on the instant motion was set for March 23, 2010.  On the date of the hearing, a document was filed from an electronic filing account with the court, in the name of Clinton Snow,[1] titled "Proposed Further Modifications to Plan" (Docket No. 911).  The document, unsigned, purports to resolve IEC's objection by providing that proceeds equal to a pro rata share of

---

[1] The court notes that Snow is an attorney with Gardere Wynne Sewell LLP, the firm which is Debtors' lead bankruptcy counsel.

IEC's proceeds, calculated as if maritime lien claimants have priority over bondholders, will be reserved, pending an adversary proceeding. Debtors and NT have subsequently filed a motion for approval of the "second modification." (Docket No. 925).

At the hearing on the instant motion, Youllonda Driver, the controller of Viking Drilling ASA, and the chief financial officer of the other four Debtors, testified that the proposed changes to the indemnity of the members of the trust oversight committee would be extended to the companies that employed the individuals who will hold those positions. She testified that Debtors are proposing that the modification include the language addressed at Docket No. 911, to reflect the settlement with IEC. She testified that the settlement was negotiated by Debtors with Gulf Copper, the largest maritime lien holder, and NT. She testified that, under the modification as proposed and supplemented on the date of the hearing, cash would be escrowed pending resolution of IEC's maritime lien claim, and cash would be distributed to the remaining maritime lien holders and bondholders in accordance with the 40/60 split proposed in the instant motion.

At the hearing on the instant motion, counsel for IEC stated that he believes the modification proposed at Docket No. 911 resolves IEC's objection, but that he had not had a sufficient opportunity to discuss the modification with his

5

client.  The court held the instant matter open through April 1, 2010, in order to allow counsel to file any further statement of IEC's position.  IEC filed no further statement of its position.

## Conclusions of Law

Under Section 1127(b) of the Bankruptcy Code, the proponent of a plan or the reorganized debtor may modify the plan at any time after confirmation of the plan but before substantial consummation of the plan, but may not modify the plan such that the plan as modified fails to meet the requirements of Sections 1122 and 1123.  The plan as modified becomes the plan "only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under Section 1129 of this title."  11 U.S.C. § 1127(b).

Under Section 1123(a)(4) of the Bankruptcy Code, the plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."

In the instant case, the proposed modification violates Section 1123(a)(4).  The treatment of IEC in Class 3B differs from the treatment of the other claims in Class 3B.[2]  There is no evidence that the treatment of IEC is a "less favorable

---

[2]This is not to suggest that the plan could not be modified to place IEC in a separate class.

6

treatment" to which IEC has agreed. The court concludes that the instant proposed modification (together with the second modification proposed on the date of the hearing and subject to the subsequent motion at Docket No. 925) should be denied without prejudice.

Based on the foregoing, a separate Judgment will be entered denying without prejudice the "Joint Motion for Authority to Make Non-Material Modifications to Modified Joint Non-Consolidating Chapter 11 Plan of Liquidation" (Docket No. 891) and the "Motion for Entry of Order Granting Joint Motion for Authority to Make Non-material Modifications to Modified Joint Non-consolidating Chapter 11 Plan of Liquidation" (Docket No. 925).

Signed at Houston, Texas on June 18, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE